BOUTALL, Judge
(concurring).
I concur with the result of the majority opinion herein and I am in substantial agreement with the thoughts expressed therein. However, as I have stated in my dissent in the case of Garrison v. Connick, 288 So.2d 681 at page 686, I cannot agree that mere failure of a voter to sign the precinct register is sufficient ground of itself to consider the nullity of an election, to which I add that such a vote should not be imputed against the victor as an additional penalty to an irregular vote, but the circumstances of this case are such as to require a conclusion that the large numbers of unsigned registration cards, when considered with the other evidence presented, is persuasive to a conclusion that the result of this election was based upon the types of irregularities denounced by the statute. L.R.S. 18:364(B). Of the fifteen precincts complained of in the petition, some four were used in argument as particular target precincts, and in those precincts, the largest amount of irregularities occurred. My own examination of the evidence in those four precincts convinces me that there were at least 259 irregular and fraudulent votes cast therein. I particularly rely upon the forged signatures of voters and the large amount of voters for whom no registration card appears. Accordingly I ascribe to the majority opinion.
However, having reached the conclusion that the result of the election should be annulled, I find, and I suppose that the majority of this court has some difficulty, that because of the time frame involved in this particular election process, there is insufficient time to order that a new primary election be held for the nomination of the Democratic Candidate. Under the provisions of L.R.S. 18:362, L.R.S. 18:1072, and the holdings of the cases of Downs v. Pharis, 240 La. 580, 124 So.2d 553, and Plessala v. Landry, La.App., 244 So.2d 298, there is ample authority for this court to have declared that the issue before it was moot, because no effective remedy can be offered at this late date by way of a judicial declaration ordering a new election. The result therefore was that the statutory provisions provided for the name of one of the candidates to be declared the nominee and placed upon the ballot in time for the general election. The order of the Louisiana Supreme Court dated October 13, 1976 in this case delayed absentee voting in this election until further orders of that court. As I see it, this order has the effect of removing this case from the limitations imposed by the Downs case (this being a Supreme Court decision we are bound by its *796 holding) and the statutory law. If the intention of that court was to remove the question of mootness in this case, then it appears to me that the Supreme Court should announce that Downs is overruled and make a clear delineation as to what the statutory procedure to be followed is in a case such as this, where the very holding of the general election is now cast in doubt by the inability of the prospective absentee voters to cast their ballots. Whether or not the former procedure was fair to a particular candidate, it at least was certain as to his being placed upon the ballot timely for the general election. Perhaps a legislative remedy is needed in such circumstances but the stay order has caused uncertainty at least in my mind. In any event, I presume that the provisions of L.R.S. 18:362 still apply to this case.